NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PETER INGLIEMA | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 05-cv-3497 (DMC) |
| THE TOWN OF HAMPTON, THE TOWN OF FREDON, NEW JERSEY, THE COUNTY OF SUSSEX, AND DETECTIVE KENNETH KUZICKI, JOE KULESA, III, JOHN DOE (1-12), | |
| Defendant. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Defendant Kenneth Kuzicki ("Defendant") for summary judgment pursuant to Federal Rule of Civil Procedure 56. Pursuant to Rule 78 of the Federal Rules of Civil Procedure no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendant's motion is **granted**.

### I. BACKGROUND

Defendant Kenneth Kuzicki is a police officer in Vernon Township and at all relevant times was assigned to the Sussex County Narcotics Task Force as an undercover officer. Beginning in June 2003, Defendant received information from an informant, Joseph Kulesa III, regarding the sale of marijuana from an individual identified as Peter Ingliema. Thereafter, on June 17, 2003 and September 2, 2003, Defendant engaged in drug transactions with an individual named "Pete." The

June 17 transaction took place at a residence and lasted only a matter of minutes. The September 2 transaction took place in a park where the seller never exited the vehicle.

On September 19, 2003, Detective Kieran McMorrow, also a member of the Task Force, showed Defendant a picture of Plaintiff Peter Ingliema ("Plaintiff"). The photograph did not include information regarding height or weight. Defendant positively identified Plaintiff as the individual with whom he engaged in drug transactions on two prior occasions. On December 1, 2003, two warrants were issued based upon the affidavits of Defendant. Detective McMorrow contacted Plaintiff's brother, Angelo Ingliema, and informed him of the arrest warrants that had recently been issued. Angelo Ingliema informed Detective McMorrow that Plaintiff was living in Brooklyn and also that Plaintiff might use the identities of one of his brothers to confuse police.

Peter Ingliema was arrested in New York on March 25, 2004. Plaintiff waived extradition and was held in New York for six days. On March 31, 2004, Plaintiff was transferred to Sussex County Jail where he was released on bail the following day. At a hearing on May 10, 2004 Plaintiff produced evidence supporting an alibi. The Prosecutor's office investigated the alibi and interviewed the informant, Kulesa, on June 4, 2004. Kulesa indicated that the person he initially identified as Peter Ingliema was actually a cousin of Plaintiff named Peter Ryan. The charges against Plaintiff were administratively dismissed on June 14, 2004.

Plaintiff filed a Complaint against several parties, including Defendant Kuzicki, on March 20, 2006. The Complaint alleges that as a result of a reckless and grossly negligent investigation Plaintiff spent several days in prison. The Complaint avers that in conducting his investigation Defendant was reckless by failing to interview Plaintiff and his girlfriend or securing additional photographs from Plaintiff's family in order to confirm his identity prior to arrest. Compl. ¶ 15.

Specifically, the Complaint alleges that these Defendants "under Color of law violated the Civil Rights of Plaintiff as protected by 42 U.S.C. § 1983." Compl. ¶ 15. The Complaint does not identify which specific civil rights were violated, rather he repeatedly alleges that Defendants' conduct violated his constitutional and civil rights. Compl. ¶ 15, 16, 17.

## II.  STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing that there is no genuine issue of fact and it must prevail as a matter of law, or that the non-moving party has not shown facts relating to an essential element of the issue for which he bears the burden. Id. at 331. If either showing is made then the burden shifts to the non-moving party, who must demonstrate facts which support each element for which he bears the burden and must establish the existence of genuine issues of material fact. Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, Fed. R. Civ. P. 56(e), but must produce sufficient evidence to support a jury verdict in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

## III.  DISCUSSION

### A.  Standard for Pleading Violation of Constitutional Rights Pursuant to 42 U.S.C. § 1983

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by . . . the United States Constitution and federal statutes." Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979). To state a cause of action pursuant to Section 1983, a

plaintiff must allege two elements: (1) a violation of a right secured by the Constitution or federal law; and (2) that the violation of that right was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). The initial question is whether the plaintiff has alleged the deprivation of a constitutional right at all. Donahue v. Gavin, 280 F.3d 371, 378 (3d Cir. 2002) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 842 n.5 (1998)). See also Albright v. Oliver, 510 U.S. 266, 271 (1994) (holding that "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed."). If there is no indication "that the plaintiff has not suffered such a deprivation, the defendant is entitled to dismissal." Jenkins v. Medford, 119 F.3d 1156, 1160 (4th Cir. 1997).

It is important to note that "§ 1983 provides a remedy for deprivations of *specific* constitutional rights, not generalized allegations of constitutional deprivations." Trautvetter v. Quick, 916 F.2d 1140, 1148 (7th Cir. 1990) (emphasis in original). This requirement is not meaningless, as plaintiffs can find protections against state action in multiple constitutional provisions or federal statutes. See John Corp. v. City of Houston, 214 F.3d 573, 577 (5th Cir. 2000) (noting that "[i]ndividuals may look to several constitutional provisions for protection against state action that results in a deprivation of their property"). Failure to allege violation of a specific constitutional right is especially problematic given that the purpose of modern pleading is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). When no specific constitutional right is alleged the defendant lacks the requisite notice needed to properly defend against the claims asserted.

Additionally, only once the specific constitutional right is identified can the Court begin to analyze the adequacy of the pleadings. The specific constitutional right alleged establishes what will be the controlling substantive law. For example, merely alleging a First Amendment violation in a

Section 1983 claim is not sufficient to state a cause of action.  Morris v. Kansas Dep't of Revenue, 849 F. Supp. 1421, 1426 (D. Kan 1994).  To state a retaliation claim under the First Amendment the complaint must also allege that the plaintiff engaged in constitutionally protected speech and that the retaliation was a result of that speech.  Id.  Similarly, a plaintiff relying upon Section 1983 to assert a violation of the Fourth Amendment must plead facts that, if true, would establish a violation of the Fourth Amendment.

Without identifying a specific constitutional right, defendants are not properly put on notice of plaintiffs' claims, and courts cannot evaluate the sufficiency of a complaint.  For those reasons, "failure to identify a right, privilege or immunity secured by the Constitution that was violated merits dismissal of the cause of action."  Codd v. Brown, 949 F.2d 879, 882 (6th Cir. 1991).  See GJR Invs. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998) (finding that "[i]t simply fails to state an equal protection claim . . . The words 'equal protection' do not appear *anywhere* in the complaint") (emphasis in original); Lyles v. Clinton-Ingham-Eaton Cmty. Mental Health Bd., 35 F. Supp. 2d 548, 552 (W.D. Mich. 1998) (dismissing claim because plaintiff "did not even allege the specific Constitutional right, such as due process or equal protection, upon which he bases his claim").

Applying these principles to Plaintiff's claim, it is clear that Plaintiff has not identified a specific constitutional or federal right.  Instead, Plaintiff's Complaint alleges constitutional violations in the most amorphous possible terms.  In paragraphs 15, 16, and 17 of the Complaint, Plaintiff alleges that his "constitutional and civil rights" were violated by Defendants' conduct.  Allegations of this sort do not fairly put Defendants on notice of the constitutional provisions or civil rights they allegedly violated.  Accordingly, summary judgment is appropriate.

**B.     Allegations in the Complaint Are Not Sufficient to Constitute a Violation of Constitutional Rights**

Even if this Court were to liberally read Plaintiffs' Complaint as alleging specific violations of his constitutional rights, it is evident that Plaintiff is not entitled to relief. Based on the facts alleged, Plaintiff may only reasonably claim that Defendants violated his Fourth and Fourteenth Amendment rights. As set forth below, even taking the facts alleged in the light most favorable to Plaintiff, do not constitute deprivations of Plaintiff's constitutional rights.

1.     The Complaint Does Not Allege Facts that Establish a Fourth Amendment Violation

Assuming *arguendo* that Plaintiff's Complaint alleges a Fourth Amendment violation it still fails to state a claim. To properly state a claim, the Complaint must allege facts that, if true, would be sufficient to establish a violation of the Fourth Amendment. Decided on similar facts, Baker v. McCollan is instructive. 443 U.S. 137. McCollan was arrested pursuant to a facially valid warrant. Id. at 143. McCollan did not attack the warrant, rather the heart of his claim was "that despite his protest of mistaken identity, he was detained." Id. at 144. The Court noted that while McCollan "was indeed deprived of his liberty for a period of days . . . it was pursuant to a warrant conforming . . . to the requirements of the Fourth Amendment." Id. The Court further observed that "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every Defendant acquitted - indeed, for every suspect released." Id. at 145.

Similar to McCollan, Plaintiff does not allege that the warrant for his arrest was facially invalid. Instead, Plaintiff asserts that the warrant was issued as a result of a recklessly or grossly negligent investigation. Compl. ¶14. In order to prevail on a Section 1983 action for false arrest made pursuant to a warrant the plaintiff must allege "(1) that the police officer 'knowingly and

deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'" Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000) (quoting Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997)).

Plaintiff makes no such allegations. Instead, Plaintiff charges that prior to the arrest Defendants should have interviewed Plaintiff, his girlfriend, or his employer to verify his identity. Compl. ¶15. Moreover, the Complaint asserts that Defendants should have obtained a photograph from Plaintiff's family to avoid the risk of mistaken identity. Id. Even if Defendant failed to take these actions, such omissions do not amount to demonstrating "a falsehood in applying for the warrant." Wilson, 212 F.3d at 786. Thus, not only does Plaintiff's Complaint fail to state a claim upon which relief could be granted but additionally, Defendant is entitled to summary judgment. See Dandridge v. Police Dep't. of Richmond, 566 F. Supp. 152, 158 (E.D. Va. 1983) (noting that "[t]he standard for granting a motion for summary judgment is considerably lower than that for granting a motion to dismiss") (citing Conley, 355 U.S. 41). If Plaintiff were able to prove the facts alleged in his Complaint, it would still not be sufficient to produce a judgment in his favor. Even accepting as true all of Plaintiff's factual allegations, Plaintiff would not be able to establish Defendant's liability. As such, there is no issue of fact for a fact-finder to consider, and Defendant is entitled to judgment as a matter of law.

    2.    Plaintiff Cannot Claim a General Fourteenth Amendment Violation

Similarly, Plaintiff cannot seek recovery by alleging that his Fourteenth Amendment substantive due process rights were violated where there is no Fourth Amendment violation. In Albright, the plaintiff brought a Section 1983 claim against a police officer alleging that the officer had violated his Fourteenth Amendment rights by instituting an arrest without probable cause. 510

U.S. at 269. The plaintiff's claim was grounded in notions of substantive due process as opposed to the Fourth Amendment. Id. at 271. The Supreme Court rejected this claim, holding that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" Id. at 273 (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). The Court found that there is no reason to expand substantive due process when there is already a specific Amendment that covers the challenged government conduct. Id. While the plaintiff was deprived of a liberty interest, "[t]he Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." Id. at 274.

The same rationale applies to the substance of Plaintiff's claim. Plaintiff only goes so far as to allege that his constitutional and civil rights were violated. The essence of Plaintiff's claim is that Defendants conducted "a recklessly and/or grossly negligent investigation, charged, caused to be issued a warrant for arrest, caused to be arrested and incarcerated and subjected Plaintiff to a criminal legal process." Compl. ¶ 14. It therefore seems apparent that Plaintiff's primary contention is that he was unlawfully seized in violation of the Fourth Amendment. Thus, a specific constitutional provision - the Fourth Amendment - "provides an explicit textual source of constitutional protection" against unlawful seizures. Albright, 510 U.S. at 271. Accordingly, summary judgment is appropriate because Plaintiff may not recover on claims that his general substantive due process rights were violated when an explicit constitutional provision provides protection for this type of government conduct.

**C.    Defendant is Entitled to Qualified Immunity**

Additionally, summary judgment is appropriate because Defendant is entitled to qualified immunity. Government officers are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether a particular defendant is entitled to qualified immunity, courts must undertake a two part analysis. First, the court must determine whether a constitutional right has been violated. Wilson v. Layne, 526 U.S. 603, 609 (1999). Second, the court must decide whether that right is clearly established. Id. Therefore, the initial inquiry is similar to the one above. The court must identify the specific constitutional violation alleged, and "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier v. Katz, 533 U.S. 194, 201 (2001). For similar reasons already discussed, Plaintiff does not identify a specific constitutional violation, and therefore the first part of the qualified immunity analysis is not satisfied.

Even if the court assumes that Defendants' conduct violated Plaintiff's Fourth Amendment rights, Plaintiff could still not prevail. Even under such a scenario, Defendant would nevertheless be entitled to qualified immunity because, under the appropriate analysis, Plaintiff's "right" to be free from arrest based on less than probable cause is not a clearly established right. See Wilson, 526 U.S. at 609. Instructive in this case is the Supreme Court's decision in Anderson v. Creighton. 483 U.S. 637 (1987). In Anderson an FBI agent performed a warrantless search of the plaintiff's home because he believed a bank robber was present there. The Court began by noting that a determination of whether a right is clearly established "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." Id. at 639. Instead, for a right to be clearly established "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 640. In order for a plaintiff to circumvent qualified immunity the unlawfulness of the challenged government conduct must be

apparent in light of pre-existing law. Id.

While the general right to be free of such warrantless searches is beyond question, "[i]t simply does not follow immediately . . . that [the agent]'s search was objectively legally unreasonable." Id. at 641. Inevitably, there will be circumstances where law enforcement officers will conclude, reasonably but mistakenly, that probable cause exists. Id. Thus, a law enforcement officer cannot be held liable if "a reasonable officer could have believed" that the challenged conduct was lawful, "in light of clearly established law and the information the . . . officer possessed." Id.

Applying this standard to the instant case, Defendant's conduct was objectively reasonable and liability is barred by qualified immunity. Defendant's informant identified the seller as Peter Ingliema. Defendant was shown a photograph of Plaintiff which resembled the person from whom Defendant had purchased drugs and who also matched the name supplied by the informant. The photograph did not include any information regarding weight. While Defendant was ultimately mistaken, his actions in swearing out an arrest warrant were not objectively unreasonable.

### IV. CONCLUSION

For the reasons stated, it is the finding of this Court that the Defendant's motion for summary judgment is **granted**. An appropriate Order accompanies this Opinion.

        S/ Dennis M. Cavanaugh
        Dennis M. Cavanaugh, U.S.D.J.

Date:      April  10 , 2007
Orig.:      Clerk
cc:        Counsel of Record
           The Honorable Mark Falk, U.S.M.J.
           File