NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PETER INGLIEMA, | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 05-CV-3497 (DMC) |
| THE TOWN OF HAMPTON, THE TOWN OF FREDON, NEW JERSEY, THE COUNTY OF SUSSEX, AND DETECTIVE KENNETH KUZICKI, JOE KULESA, III, DETECTIVE KIERAN McMORROW, DETECTIVE MOYLE, DETECTIVE SANDAGE, THE SUSSEX COUNTY NARCOTICS TASK FORCE, THE SUSSEX COUNTY PROSECUTOR OFFICE AND THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY in his official capacity, JOHN DOE (1-12) being fictitious person male or female, | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Defendants Sussex County Prosecutors Office and County of Sussex ("Defendants") for summary judgment pursuant to Federal Rule of Civil Procedure 56. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, no oral argument was heard. After carefully considering the submissions of the parties and based upon the following, it is the finding of this Court that Defendants' motion is **granted**.

**I.     BACKGROUND**

Defendant Kenneth Kuzicki is a police officer in Vernon Township assigned to the Sussex County Narcotics Task Force ("Task Force") as an undercover officer. In June 2003, Kuzicki received information from an informant, Joseph Kulesa III, regarding an individual identified as Plaintiff Peter Ingliema ("Plaintiff"). Thereafter, on June 17, 2003 and September 2, 2003, Kuzicki engaged in drug transactions with an individual named "Pete." The June transaction occurred at the individual's residence and only lasted a few minutes. The September transaction occurred in a park while the seller remained in his vehicle.

On September 19, 2003, Detective Kieran McMorrow, also a member of the Task Force, showed Kuzicki a picture of Plaintiff. The photograph did not depict Plaintiff's height or weight. Kuzicki positively identified the picture of Plaintiff to be the person who sold him marijuana on two prior occasions. On December 1, 2003, two warrants were issued based upon Kuzicki's affidavits. McMorrow contacted Plaintiff's brother, Angelo Ingliema, and informed him that the arrest warrants were recently issued. Angelo Ingliemo informed McMorrow that Plaintiff resided in Brooklyn and also that Plaintiff might use the identities of one of his brothers to confuse the police.

Plaintiff was arrested in New York on March 25, 2004. Plaintiff waived extradition and was held in New York for six days. On March 31, 2004, Plaintiff was transferred to the Sussex County Jail where he was released on bail the following day. At a hearing on May 10, 2004, Plaintiff produced evidence supporting an alibi. The subsequent investigation prompted an interview with Kulesa on June 4, 2004. Kulesa indicated that the person he initially identified as Plaintiff was actually Plaintiff's cousin Peter Ryan. The charges against Plaintiff were administratively dismissed on June 14, 2004.

In July 2005, Plaintiff filed a Complaint alleging civil rights violations against several parties. An Amended Complaint was filed in March 2006 adding Defendants. The Amended Complaint alleges that Defendants "under the Color of law violated the Civil Rights of Plaintiff as protected by 42 U.S.C. § 1983." (Am. Compl. ¶ 14.) The Amended Complaint fails to identify which specific civil rights were violated, but repeatedly alleges that Defendants' conduct violated Plaintiff's constitutional and civil rights. (Am. Compl. ¶ 15, 16, 17.)

## II.    STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing that there is no genuine issue of fact and it must prevail as a matter of law or that the non-moving party has not shown facts relating to an essential element of the issue for which he bears the burden. See id. at 331. If either showing is made, the burden shifts to the non-moving party, who must demonstrate facts supporting each element for which he bears the burden and must establish the existence of genuine issues of material fact. See id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, FED. R. CIV. P. 56(e), but must produce sufficient evidence to support a jury verdict in his favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

### III.    DISCUSSION

#### A.    Standard for Pleading Violation of Constitutional Rights Pursuant to 42 U.S.C. § 1983

42 U.S.C. § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by . . . the United States Constitution and federal statutes." Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979). To state a cause of action pursuant to § 1983, a plaintiff must allege two elements: (1) a violation of a right secured by the Constitution or federal law; and (2) that the violation of that right was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988). The initial question is whether the plaintiff has alleged the deprivation of a constitutional right at all. See Donahue v. Gavin, 280 F.3d 371, 378 (3d Cir. 2002) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 842 n.5 (1998)); see also Albright v. Oliver, 510 U.S. 266, 271 (1994) (holding that "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed."). If there is no indication "that the plaintiff has not suffered such a deprivation, the defendant is entitled to dismissal." Jenkins v. Medford, 119 F.3d 1156, 1160 (4th Cir. 1997).

Moreover, "§ 1983 provides a remedy for deprivations of *specific* constitutional rights, not generalized allegations of constitutional deprivations." Trautvetter v. Quick, 916 F.2d 1140, 1148 (7th Cir. 1990) (emphasis in original). This requirement is not meaningless, as plaintiffs can find protections against state action in multiple constitutional provisions or federal statutes. See John Corp. v. City of Houston, 214 F.3d 573, 577 (5th Cir. 2000) (noting that "[i]ndividuals may look to several constitutional provisions for protection against state action that results in a deprivation of their property"). Failure to allege a violation of a specific constitutional right is especially problematic given that the purpose of modern pleading is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). When no specific constitutional right is alleged, the defendant lacks the requisite notice

4

needed to properly defend against the claims asserted.

Additionally, only after the specific constitutional right is identified can the Court begin to analyze the adequacy of the pleadings. The specific constitutional right alleged establishes what will be the controlling substantive law. For example, merely alleging a First Amendment violation in a § 1983 claim is insufficient to state a cause of action. See Morris v. Kansas Dep't of Revenue, 849 F. Supp. 1421, 1426 (D. Kan. 1994). To state a retaliation claim under the First Amendment, the complaint must also allege that the plaintiff engaged in constitutionally protected speech and that the retaliation was a result of that speech. See id. Similarly, a plaintiff relying upon § 1983 to assert a violation of the Fourth Amendment must plead facts that, if true, would establish a violation of the Fourth Amendment. See id.

Without identifying a specific constitutional right, defendants are not properly put on notice of plaintiffs' claims and courts cannot evaluate the sufficiency of a complaint. For these reasons, "failure to identify a right, privilege or immunity secured by the Constitution that was violated merits dismissal of the cause of action." Codd v. Brown, 949 F.2d 879, 882 (6th Cir. 1991); see also GJR Invs. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998) (finding that "[i]t simply fails to state an equal protection claim . . . The words 'equal protection' do not appear *anywhere* in the complaint") (emphasis in original); Lyles v. Clinton-Ingham-Eaton Cmty. Mental Health Bd., 35 F. Supp. 2d 548, 552 (W.D. Mich. 1998) (dismissing claim because plaintiff "did not even allege the specific Constitutional right, such as due process or equal protection, upon which he bases his claim").

In the current case, Plaintiff has failed to identify a specific constitutional or federal right, but rather alleges constitutional violations in the most amorphous possible terms. In paragraphs 15-17 of the Amended Complaint, Plaintiff alleges that his "constitutional and civil rights" were

5

violated by Defendants' conduct. Such allegations fail to fairly put Defendants on notice of the constitutional provisions or civil rights that they allegedly violated. Accordingly, summary judgment for Defendants is appropriate.

### B. The Allegations in the Amended Complaint Are Insufficient to Constitute a Violation of Plaintiff's Constitutional Rights

Even if this Court were to liberally read Plaintiffs' Amended Complaint as alleging specific violations of his constitutional rights, it is evident that Plaintiff is not entitled to relief. Based on the facts alleged, Plaintiff may only reasonably claim that Defendants violated his Fourth and Fourteenth Amendment rights. As set forth below, even taking the facts alleged in the light most favorable to Plaintiff, those factors fail to constitute deprivations of Plaintiff's constitutional rights.

#### 1. The Amended Complaint Fails to Allege Facts that Establish a Fourth Amendment Violation

Assuming *arguendo* that Plaintiff's Amended Complaint alleges a Fourth Amendment violation, it still fails to state a claim. To properly state a claim, the Amended Complaint must allege facts that, if true, would be sufficient to establish a violation of the Fourth Amendment. Baker v. McCollan is instructive because it was decided on similar facts. See 443 U.S. 137 (1979). McCollan was arrested pursuant to a facially valid warrant. See id. at 143. McCollan did not attack the warrant, but rather claimed "that despite his protest of mistaken identity, he was detained." Id. at 144. The Court noted that while McCollan "was indeed deprived of his liberty for a period of days . . . it was pursuant to a warrant conforming . . . to the requirements of the Fourth Amendment." Id. The Court further observed that "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted – indeed, for every suspect released." Id. at 145.

Similarly, in the current case, Plaintiff does not allege that the warrant for his arrest was facially invalid. Instead, Plaintiff asserts that the warrant was issued as a result of a reckless or grossly negligent investigation. (Am. Compl. ¶14.) In order to prevail in a § 1983 action for false arrest made pursuant to a warrant, the plaintiff must allege "(1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'" Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000) (quoting Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997)).

Here, Plaintiff makes no such allegations. Instead, Plaintiff charges that, prior to the arrest, the Task Force should have interviewed Plaintiff, his girlfriend or his employer to verify his identity. (Am. Compl. ¶15.) Moreover, the Amended Complaint asserts that the Task Force should have obtained a photograph from Plaintiff's family to avoid the risk of mistaken identity. See id. Even if the Task Force failed to take these actions, such omissions do not amount to demonstrating "a falsehood in applying for the warrant." Wilson, 212 F.3d at 786. Thus, not only does Plaintiff's Amended Complaint fail to state a claim upon which relief could be granted, but additionally, Defendants are entitled to summary judgment. See Dandridge v. Police Dep't. of Richmond, 566 F. Supp. 152, 158 (E.D. Va. 1983) (noting that "[t]he standard for granting a motion for summary judgment is considerably lower than that for granting a motion to dismiss") (citing Conley, 355 U.S. 41). If Plaintiff was able to prove the facts alleged in his Amended Complaint, it would still be insufficient to produce a judgment in his favor. Even accepting as true all of Plaintiff's factual allegations, Plaintiff would be unable to establish Defendants' liability. Therefore, there is no issue of fact for a fact-finder to consider and Defendants are entitled to judgment as a matter of law.

### 2. Plaintiff Cannot Claim a General Fourteenth Amendment Violation

Similarly, Plaintiff cannot seek recovery by alleging that his Fourteenth Amendment substantive due process rights were violated where there is no Fourth Amendment violation. In Albright, the plaintiff brought a § 1983 claim against a police officer alleging that the officer violated his Fourteenth Amendment rights by making an arrest without probable cause. See 510 U.S. at 269. The plaintiff's claim was grounded in notions of substantive due process as opposed to the Fourth Amendment. See id. at 271. The Supreme Court rejected this claim, holding that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" Id. at 273 (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). The Court found that there is no reason to expand substantive due process because there is already a specific Amendment that covers the challenged government conduct. See id. While the plaintiff was deprived of a liberty interest, "[t]he Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." Id. at 274.

In the current case, the same rationale applies to the substance of Plaintiff's claim. Plaintiff only goes so far as to allege that his constitutional and civil rights were violated. The essence of Plaintiff's claim is that the Task Force conducted "a recklessly and/or grossly negligent investigation, charged, caused to be issued a warrant for arrest, caused to be arrested and incarcerated and subjected Plaintiff to a criminal legal process." (Am. Compl. ¶ 14.) Therefore, Plaintiff's primary contention is that he was unlawfully seized in violation of the Fourth Amendment. Thus, a specific constitutional provision – the Fourth Amendment – "provides an explicit textual source of constitutional protection" against unlawful seizures. See Albright, 510 U.S. at 271. Accordingly, summary judgment is appropriate because Plaintiff may not recover on claims that his general substantive due process rights were violated when an explicit constitutional provision provides

protection for this type of government conduct.

      **C.    Defendants Are Entitled To Summary Judgment Because Defendants Did Not Have a Policy or Custom Designed to Deprive Plaintiff of his Constitutional Rights**

Under § 1983, a public entity or supervisory employee cannot be held liable under the theory of respondeat superior solely for employing a tortfeasor. See Monell v. Dep't. of Soc. Servs. of the City of N.Y., 436 U.S. 658, 691 (1978). To sustain a § 1983 claim, a plaintiff must prove either (1) an official policy or custom which results in constitutional violations or (2) conduct by officials in authority evincing implicit authorization, approval or acquiescence in the unconstitutional conduct. See Popow v. Margate, 476 F. Supp. 1237, 1245 (D. N.J. 1979). The Supreme Court of the United States has defined a policy as a "statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 635. The Court defined "custom or usage" as practices of state officials that are "so permanent and well settled as to constitute 'custom or usage' with the force of law." Id. at 691. Although a violation can be found in an informal custom that has not received formal approval, a policy cannot be inferred from a single, isolated incident of police misconduct. See Losch v. Borough of Parkesburg, 736 F.2d 903, 911 (3d Cir. 1984).

Assuming *arguendo* that Plaintiff suffered a constitutional violation, Plaintiff still fails to allege a specific policy adopted by Defendants designed to deprive Plaintiff of his constitutional rights or identify any implicit authorization, approval or acquiescence of alleged unconstitutional conduct of the Task Force. Plaintiff also fails to establish any facts that demonstrate a causal link between an official policy or custom of the Defendants and the alleged constitutional violations by the Task Force. Plaintiff has not alleged that any affirmative conduct by Defendants contributed to any alleged constitutional violation. Summary judgment for Defendants is appropriate.

Plaintiff is under the mistaken belief that Defendant Sussex County can be held liable for the Task Force's actions. The New Jersey Supreme Court made clear that a county cannot "be held

liable for the actions of the county prosecutor and his detectives when their tortious conduct arose out of the investigation of criminal activity." Wright v. State of New Jersey, 169 N.J. 422, 439 (2001). Even if Plaintiff asserts a cognizable action against the Task Force, Sussex County cannot be held vicariously liable since the Task Force's alleged misconduct arose in the course of criminal investigation.

### IV.    CONCLUSION

For the reasons stated, it is the finding of this Court that Defendants' motion for summary judgment is **granted**. An appropriate Order accompanies this Opinion.

S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:       October 1, 2007
Orig.:      Clerk
cc:         Counsel of Record
            The Honorable Mark Falk, U.S.M.J.
            File